Battue, J.
 

 The only question presented by the' pleadings, which it is necessary for us to consider, is, whether Mrs. Dolly Alston took such an interest in the estate of her husband, John Alston, by virtue of his will, as enabled her to convey to the defendant a good title to the tract of land, now in controversy.
 

 In the first clause of his will, the testator directs- that bis debts shall be paid, and for that purpose, he specifies three slaves, ‘which he wishes to be sold; and if it should be found necessary to sell more property, he points out a certain tract of land and his “right and interesfi’in certain negroes, then held by other persons. In the second clause, he devises and bequeaths as follows:
 

 “ I give and bequeath to my beloved wife, Dolly Alston, after paying my just debts, all of my property, real, personal and perishable, to be her’s in fee simple, so that she can have the right of giving it to our six children, (Ann Maria Arrington, Mariam B. Allen, Frances A. Alston, John Alston, Gid. Alston and Thomas M. 0. Alston,) as she may think best.” The plaintiffs contend that under a proper construction of this clause, the testator’s widow took all his estate after the payment of his debts, as trustee for his children, and that the trust conferred upon her no power to sell the land, and that consequently, the defendant, having purchased, with a notice of the trust, became himself a trustee for the testator’s children. The counsel for the defendant, objects to this construction, and insists that the widow took an absolute estate for her own use in the property given her by the will, or if she took in trust for her and the testator’s children, she took it coupled with an implied power to sell any part of it, at her discretion, and to apply the proceeds in any manner she might think best for the children.
 

 There is no class of cases, arising from the construction of wills, in which there has been a greater fluctuation of deci
 
 *30
 
 sion than in that which involves the enquiry, whether a trust has been imposed upon a devisee or legatee, in favor of other persons. Technical language not being necessary to create a trust, any words of recommendation, request, entreaty, wish, or expectation, addressed to a devisee or legatee, have been held to make him a trustee for the person or persons, in whose favor the expressions were used ; provided, the testator pointed out with sufficient clearness and certainly, both the subject-matter and the object, or objects, of the intended trust. This was, of course, supposed to be in accordance with the testators intention, and in the earlier cases a very slight indication of such intention seems to have been deemed sufficient. Thus, in
 
 Massey
 
 v. Sherman, Amb. Rep. 530, where a testator devised copyholds to his wife, not doubting that she would dispose of the same to, and amongst, his children as she should please; this was held to be a trust for the children, as the wife should appoint. Many other cases of a similar kind came before the courts from time to time, and were decided in the same way, the leaning, in each case, seeming to be, very decidedly, in favor of a trust. At last, however, the courts began to doubt whether they had not gone too far in investing with the efficacy of a trust, loose expressions of the kind above referred to, which, very probably, were never intended to have such an operation. Under the influence of this change of judicial interpretation, the case of
 
 Meredith
 
 v.
 
 Heneage,
 
 1 Sim. Rep. 542, was disposed of in the House of Lords. There, the testator, after having given his real and personal estate, in the fullest terms, to his wife, declared that he had given his whole estate to her unfettered and unlimited, in full confidence and the firmest persuasion, that in her future disposition and distribution thereof, she would distinguish the heirs of his late father, by devising and bequeathing the whole of his said estate, together and entire, to such of his father’s heirs as she might think best deserved her' preference. It was
 
 held
 
 by the House of Lords, confirming a decree in the Exchequer, that the wife was absolutely entitled for her own benefit — Lord EldoN, considering that the
 
 *31
 
 testator intended to impose a moral, but not a legal obligation on his wife, for which he, as well as Lord Eedesdaee, relied much on the words “ unfettered and unlimited.” In this country the Supreme Court of Pennsylvania, has, in a recent case, where the whole subject is much discussed and considered, been governed by the same spirit of liberal interpretation. In that case,
 
 in the matter of Pennoelds
 
 Estate, 20 Pen. Rep. 268, the testator, after directing the payment of his debts, provided as follows: “ I will and bequeath to my wife, the use, benefit and profits of all my real estate during her natural life; and all my personal estate of every description, including ground rents, bank stock, bonds, notes, book-debts, goods and chattels, absolutely ; having full confidence that she will leave the surplus to be divided, at her decease, justly amongst my children,” and it was
 
 held
 
 that, by the will, the
 
 absolute
 
 ownership of the
 
 personal
 
 property was given to the widow, with an expression of mere expectation, that she would use and dispose of it discreetly as a mother, and that no trust was created in relation to it. The case was ably and elaborately argued by counsel, on both sides, and in the opinion of the Court, -as delivered by Lowbie, J., the doctrine of both the Eoman and the English law on the subject, is reviewed with great ability; so that the decision is justly entitled to more than ordinary respect and consideration. In the course of the opinion, the learned Judge says:
 
 “
 
 It cannot be denied, that there is a considerable discrepancy in the English decisions on this subject, and nothing less can reasonably be expected. An artificial rule, like the one insisted on here, that is founded on no great principle of policy, and that sets aside, while it professes to seek, the will of the testator, must continually be contested, and must be frequently invaded. And no one can read the English decisions on this subject, without suspecting that all important wills, wherein similar words are found, became the subjects of most expensive contests, and gave rise to those family quarrels, which are the worst and most bitter and distressing of all sorts of litigation. We may well desire that such a rule may never constitute a
 
 *32
 
 part of our law. It rejects the plain, common sense of ex-' pressions, and it is not in human nature to submit without a contest.”
 

 In accordance with the spirit of this' decision, we find that, not only among the later English cases, but among those of several of the States of this Union, “ a strong disposition has been indicated in modern times not to extend this doctrine of recommendatory trust; but as far as the authorities will allow, to give the words of wills their natural and ordinary sense, unless it is clear that they were designed to be used in a peremptory sense. See 2 Sto. Eq. Jur. sec. 1069;
 
 Sale
 
 v. Moore, 1 Sim. 34;
 
 Lawless
 
 v. Shaw, 1 Lloyd and Goold, 154;
 
 Ford
 
 v. Fowler, 3 Bea. 156;
 
 Knight
 
 v. Knight, Ib. 148;
 
 Hart
 
 v.
 
 Hart,
 
 2 Desaus. 83 ;
 
 Van Dyck
 
 v.
 
 Van Buren,
 
 1 Caines 84;
 
 Ball
 
 v. Vardy, 2 Ves. (Sumner’s Ed.) 270, note b.” 1 Jarm. on Wills, (Perkins’ Ed.) 339, note 1.
 

 Tested by the principle of these modern adjudications there is strong ground for contending that the testator’s widow, in the case now before us, took an absolute interest in all his estate under his will. Such seems to be the plain import of the words; for he gives it to her “
 
 to he hers,”
 
 in the strongest language which he could employ, and he gives it to her, not for their children, so that they may have a direct interest in it, but “so that
 
 she can ham the
 
 right” of giving it to them “ as she may think best.” Iiis intention appears to have been, to substitute her in the place of himself, and to place her as he had been, under the moral, but not legal, obligation to provide for children who were as much hers as his. And considering that he was much in debt, of which he shows by the first clause of his will that he was aware, and that some of his children were grown up and married, we need not be surprised that he was anxious to provide for his “ beloved wife,” and to leave her children dependent upon her, rather than her upon them.
 

 This construction is not at all opposed by the decision of this Court in the case of
 
 Little v.
 
 Bennett, 5 Jones’ Eq. 156, referred to and relied on by the counsel for the plaintiffs. There
 
 *33
 
 the devise and bequest by the testator to his widow was expressly “ to raise and educate my children and to dispose of the same among all my children as their circumstances may seem to require.” The intention to create a trust for the children, was too direct and obvious for the Court to hesitate a moment in giving effect to it.
 

 But we need not, and do not, decide this question, because we are clearly of opinion that if the testator’s widow, in the case now under consideration, did take all his property, real and personal, in trust for their children, she took it with a power, necessarily implied from the terms of the will, to sell either the land or the personal chattels, at her discretion, and to give the proceeds to the children, or to reinvest for their benefit. The tract of land which she did sell to the defendant, was sold, as is clearly proved by the testimony, to save the slaves, forming part of the estate, from being taken under execution for the payment of the testator’s debts. The land may be, therefore, regarded as having been converted into slaves for the benefit of the children, and this, we are satisfied, was within the scope of her discretionary power over the estate.
 

 This view of the question is strongly corroborated by the adjudication of the Court of Appeals in Yirginia, in the case of
 
 Steele v.
 
 Livesay, 11 Grat. Rep. 454, to which our attention tion was called by the counsel for the defendant. In that case, the testator said that “having implicit confidence in my beloved wife, and knowing that she will distribute to each of my childaen in as full and fair a manner as I could, I hereby invest my said beloved wife with the right and title of all my property, bofh real and personal, to dispose of to each of my children in any way she may think proper and right.” By a subsequent clause of the will it was provided that if the widow should die without making a will, the children should have an 'equal distribution of the testator’s estate. After a full argument, it was decided by the Court that the widow had an, unlimited discretion as to the time and manner of dis-t2’ibuting the property among the testator’s children. She
 
 *34
 
 might distribute it, ox* any part of it, in her life-time, or at her death by any instrument proper for the purpose, or she might distribute to either child such hind of property as she might choose to give him or her. It was held furthei*, that the widow might sell or convey the whole, or any part of the property and distribute the proceeds of sale. And that having a discretion as to the time and manner of distribution, a purchaser of land from her was not bound to see to the application of the purchase money.
 

 The course of argument which led the Court, in that case, to the conclusion that the will of the testator conferred upon his widow an implied power of sale, will lead to the same result in our case. Here the legal title of the testator’s whole estate of every kind, is unquestionably vested in his widow, and the property is declared to be hers, for the very purpose that she may have “the right of giving” it to the children “ as she may think best.” The intention of the testator to give his wife an ample discretionary power over his estate, to be exercised for the benefit of his children, is too clearly manifested to be disregarded. The bill must be dismissed with costs.
 

 Per CuriaM, Decree accordingly.