**KING et al. v. RICHARDSON et al.**
**No. 128 G–Civil.**

District Court, M. D. North Carolina, Greensboro Division.
July 20, 1942.

was thoroughly familiar with the church's activities and functions, the causes sponsored by the denomination and the methods employed to accomplish its numerous undertakings.

He employed Mr. A. L. Brooks, also an active member and officer of that church, to write his will. After his death in 1919, the will was probated and his sons Smith and Lunsford, the designated executors and his wife, as executrix, qualified and acted as his personal representatives until Mrs. Richardson died in 1940.

Mr. Richardson recognized that the business which he had founded had a bright future. It had earned vast sums during his life and with proper management he foresaw continued success. There were two objects of his bounty—his family and the benevolent causes of the Presbyterian Church. He specified that his sons should have unhampered control and management of the business. He gave all of his 51/100 of the company to his two sons and three daughters except 8/100, but he appointed his sons and widow trustees to hold the shares of his daughters for twenty years, later changing it to 10 years.

Item V of the will is as follows: "Fifth: I give and bequeath to my beloved wife, Mary Lyn Richardson, eight one-hundredths interest in the Vick Chemical Company. At the death of my said wife it is my desire that of the said eight one-hundredths so devised to her, three one-hundredths thereof shall be and become absolutely the property of the Trustees of the First Presbyterian Church, and the profits or dividends arising therefrom shall be used by the trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the Trustees deem best. The remaining five one-hundredths interest I desire to be distributed equally among my five children, herein named, each receiving one share thereof in fee simple."

In Item VIII, after providing for the payment of debts, etc., he directs his executors to "pay to the Trustees of the First Presbyterian Church of Greensboro the sum of Two Thousand dollars, to be held by them absolutely and invested, and the proceeds arising from such investment I desire that they shall devote annually to the benevolent causes of the church in such proportion as to said trustees may seem best." The latter gift was immediate,

Brooks, McLendon & Holderness and R. R. King, Sr., all of Greensboro, N. C., and Charles G. Rose, of Fayetteville, N. C., for plaintiffs.

Clifford Frazier, R. M. Robinson, Huger S. King, and R. R. King, Jr., all of Greensboro, N. C., for defendants.

HAYES, District Judge.

This unfortunate litigation finds its origin in the divergent interpretations by eminent lawyers of North Carolina of Item V of the last will and testament of the late Lunsford Richardson. He was the founder of Vick Chemical Company. When his will was written in 1917, he and his sons Smith and Lunsford, Jr., were conducting the business as a partnership in which he owned 51%. Before his death in 1919, the business was incorporated but the stock had not been issued. He was not only a successful business man but an outstanding lay leader and active worker in the Presbyterian denomination. Besides taking active part in Sunday School and church work of the local church at Greensboro and acting as one of its officers, he represented the church as delegate at various meetings of the denomination both in the state and the Southern Assembly. He

while that under Item V was deferred until the death of Mrs. Richardson.

It is contended by the plaintiffs that a trust was created in the trustees to hold the corpus for the designated causes and to distribute income therefrom annually among the causes as the trustees deem best, while the defendants contend that the gift is free from trust to the First Presbyterian Church of Greensboro. In 1923, before the termination of the life estate, the interest was sold under the order of the church acting by its board of deacons and elders who directed the trustees to convey it to Mrs. Richardson for $45,000. It is necessary to decide the nature of the interest held by the trustees and their power under the will to sell it.

■ We must decide the question under the law of North Carolina. Neither party has cited any North Carolina case exactly like the one here involved. There are general principles often announced by the Supreme Court which point the way for our decision.

■ The controlling principle in the interpretation of wills is that the intention of the testator as expressed in the language of the will shall prevail. Where that intention substantially appears in the language of the will, courts shall not apply technical rules to defeat it. Williamson v. Cox, 218 N.C. 177, 10 S.E.2d 662. Applying this principle to the will here, the language of the will, in so far as it deals with gifts to the trustees, in Items V and XIII, plainly provides that the gifts are to the trustees of the First Presbyterian Church who are directed to use the income only for the benevolent causes of the church in such proportion as the trustees deem best. Ordinarily trustees of a church hold church property for it and subject to its will, and generally property conveyed to such trustees will be deemed the property of the church of which they are trustees. It does not follow, however, that they could not hold property in another manner. The testator, by signing the will made it his language, but the language was placed there by a lawyer of this state. Both lawyer and the testator knew the church of which they were members; they knew the trustees and the manner of selecting their successors. If the testator had intended to give the property to the First Presbyterian Church of Greensboro in absolute ownership, free to do as it pleased with it, surely a layman without the aid of a lawyer

could have found simple language to express such an intention. It is to be noted that there is an absence of a power of sale of the corpus in each item but there is a command what is to be done with the income from the corpus. It is to be distributed annually not by the deacons or elders or the congregation, but by the trustees.

■ That church had three trustees. They were three of the leading men of Greensboro and of that church. At the time of the making of the will, one of them was R. R. King, an outstanding lawyer; R. G. Vaughn, a distinguished business man and banker; the other an executive of a life insurance company—all three of the highest character. There were many deacons and elders and an enormous congregation. When the testator directed that the trustees, as distinguished from the deacons and elders and the congregation, should distribute the income among the benevolent causes of the church his language negatived an intention to place the corpus or income under the control of the church. As a business man he preferred to vest the management in the hands of three men rather than entrust it to a larger number. It seems clear that the gift was to the trustees in the manner stated, and not to the church.

The defendants contend that no trust was created because (1) No sufficient words were used to raise a trust; (2) no certain charitable objects are named; (3) no cause is named capable of enforcing a lawful claim; (4) no method is provided whereby the objects of the testator's bounty may be definitely ascertained and the ultimate purpose of his bounty effectuated; (5) the funds would be left to the uncontrollable discretion of the trustees' donee or donees with no administrative supervision and rely on St. James Parish v. Bagley, 138 N.C. 379, 50 S.E. 762, 107 Am.St. Rep. 548, and Williams v. Thompson, 216 N.C. 292, 4 S.E.2d 609, 610.

■ The law of this state is well stated in the case last cited. "In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all of the other terms in the disposition that the testator's intention to create an express trust was as full, complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner."

It is not necessary, however, that any particular form of words be employed to create a trust. If the intention of the donor to create a trust appears from the language of the will itself, the law requires nothing more. Justice Matthews in Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 1168, 32 L. Ed. 138 said: "If it appear to be the intention of the parties from the whole instrument creating it, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title." Thomas v. Clay, 187 N.C. 778, 122 S.E. 852; Laws v. Christmas, 178 N.C. 359, 100 S.E. 587; Scott on the Law of Trust, Vol. 3, sec. 351.

In Item one of the will the testator, among other things, said: "In whatsoever form the business may continue, either as a partnership or corporation, it is my wish that my two sons, J. H. Smith Richardson and Lunsford Richardson, Jr., shall continue in the exclusive and undisturbed management of the same, and that all my capital and interest in the concern be continued therein. And should the business continue as a partnership, then my interest therein shall be chargeable for its debts and liabilities."

Item II gives 3/100 interest to J. H. Smith Richardson; Item III gives 10/100 interest to Lunsford Richardson, Jr.; Item IV gives each of his three daughters 10/100 interest; Item VI makes disposition of shares to daughters upon death of either; Item VII establishes a formula for ascertaining the value in the event he or she desires to sell with the requirement that the other donees be given the option to buy before selling out of the family, and provides that the trustees of the daughters shall re-invest the proceeds in trust as therein provided; Item VIII disposes of the residue of his property to his sons and widow in trust for the widow who is to have the rents and income during her life; Item IX provides for the sale of property in Item VIII after the death of testator's wife, and division of proceeds among the five children; Item X designates a successor executor in the event of the death of one of his sons; Item XI empowers his trustees to sell property in Item VIII; Item XII appoints his sons and widow trustees to hold and act as trustees of the shares given to his daughters, for twenty years which by a codicil was changed to 10 years; the Item also makes provision for the proceeds "in the event that all my heirs concur in a sale of the Vick Chemical Co."; Item V and XIII have been stated already. The imperative command that the trustees of the First Presbyterian Church of Greensboro shall hold and invest the $2000.00 donated to them under Item XIII and use the income therefrom only for benevolent causes of the church in such proportion as the trustees deem best, clearly impresses a trust upon that fund.

As to Item V an unqualified life estate is given to the widow in 8/100 interest but at her death 5/100 interest is to be divided among the five children and the remaining three one-hundredths interest "shall be and become absolutely the property of the trustees of the First Presbyterian Church, and the profits or dividends arising therefrom shall be used by the said trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the trustees deem best." If the devise is to the church or to the trustees for the church unimpressed with a trust, and if it is so held by the court. it would arbitrarily delete from the will the provision that "the profits or dividends arising therefrom shall be used by the said trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the trustees deem best." If it is the absolute property of the church, the trustees could act only as the church directed. The church would be free to dispose of the corpus, dissipate it, and utterly destroy the income. Since the will makes provision for the sale of everything except the 3/100 interest to the trustees and makes none as to them but directs the use of the income, the conclusion that the estate intended to create a trust is irresistable. He wanted his interest in the company to remain there. If one heir sold, he did not want the interest out of the family. If, however, all of the family sold, he provided for such a contingency. The failure to make any provision in the event of a sale of the 3/100 interest given to the trustees negatives a power of sale. The command to use the dividends presupposes the retention of the corpus. It would require a magician to juggle the words of this will to read into it an intention of an absolute gift to the church or to the trustees of 3/100 interest with power to sell and use the proceeds at will. If the courts

pervert and distort English language to defeat the express provisions and intention of a testator, charitable gifts will soon cease. That this testator did not intend the use and destruction of the corpus in Item V is clearly supported by the provision in Item XIII that the trustees shall invest that fund and hold it and allocate the income therefrom to the causes designated. The will in my opinion meets the requirements of an active trust. Thomas v. Clay, supra.

■ Next it is contended that no certain charitable objects are named. The gift, as above shown, was to the Trustees of the First Presbyterian Church in trust for the Home and Foreign Missions and benevolent causes of that church. Financial support of that church consisted of current expenses, building and debt funds, fuel, lights, etc., and a group of benevolent causes which included foreign missions, Home Missions, Christian Education and Ministerial Relief, Sunday School Extension and Publications, Educational Institutes, Bible Cause and Orphan Homes. With these causes and the practice of the church in supporting them the testator was thoroughly familiar. Now he could have given all of the income to Foreign Missions alone but delegated to his trustees the power to allocate among the benevolent causes of the church the dividends as the trustees saw fit. A bequest to Foreign Missions of the Baptist denomination, to Home Missions of the Baptist denomination and to the Thomasville Orphanage has been held a sufficient designation of a beneficiary. McLeod v. Jones, 159 N.C. 74, 74 S.E. 733. The evidence in this case leaves no doubt as to the objects of his bounty. He had supported them liberally in his life, he saw fit to perpetuate that support with his means after death. He wisely felt that the congregation could take care of the expenses of the church and that his gift to these charitable objects would best effectuate his purposes. The Legislature of North Carolina, recognizing the tendency of courts to nullify wills on technical and hair-splitting distinctions, put an end to it by providing that charitable gifts should not be held invalid by reason of being indefinite or uncertain as to object or beneficiary. Code, § 4035(a).

There is no merit in the contention that no cause is named capable of enforcing a lawful claim. Each benevolent cause supported by that church has an interest in the devise. It is true the amount receivable by each cause is to be ascertained and apportioned by the trustees but this harmonizes with the statute above quoted. This applies also to contentions (4) and (5) by the defendants. Woodcock v. Wachovia Bank & Trust Co., 214 N.C. 224, 199 S.E. 20, is clearly distinguishable for there it was pointed out that "the sum is left to the uncontrolled discretion, not of the trustees, but of the beneficiaries to be selected by the trustees, and therefore goes one step beyond the curative provisions of the statute."

■ The 3/100 interest in Vick Chemical Co. equalled 450 shares of its capital stock. In 1921, the Clerk of the Superior Court of Guilford County, North Carolina, upon a petition by the executors, authorized and approved a sale of 225 shares of the stock to pay the debts of the estate. That court, in my opinion, had jurisdiction of the parties and the subject matter, and the sale of that stock under its order is not subject to review by this court. If there were irregularities in that proceeding, the plaintiffs should have proceeded in that cause for a redress of their grievances. The sale was authorized by C.S. § 69. The proceeding was not void. This court is without jurisdiction to alter it. Wadford v. Davis, 192 N.C. 484, 135 S.E. 353; United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

■ The plaintiffs alleged fraud against the defendants in respect of the sale under the order of the State court and of the remaining 225 shares, subsequently sold by the trustees to Mrs. Richardson. The evidence is wholly insufficient to support a finding of fraud on the part of any person connected with the entire matter. On the contrary, I am fully convinced that Mrs. Richardson and her children had no intention of defrauding anyone, and especially the church and its benevolent causes to which they and their relatives had been, and still are, closely identified. They were advised by counsel of ability and character that the things done by them were legal; they had a right to rely upon that advice and they did rely upon it. The evidence shows that the defendants are people of the highest character and I do not believe for a moment that anyone of them would knowingly commit a fraud against the plaintiffs or either of them. They made no misrepresentation of any

fact nor did they conceal or withhold any knowledge where it was their duty to speak. Their transactions were considered and deliberate, open and above board. The parties with whom they dealt were intelligent and everyday business men of large affairs, persons not so easily deceived. The charges of fraud and every cause of action based thereon are dismissed.

■ The parent Vick Chemical Company in which the 3/100 interest of stock was donated to these trustees has undergone many changes in its external paraphernalia since 1923 but essentially it has remained the same corporate enterprise with substantially the same officers and stockholders. The minutes of that corporation contained the will of the late Lunsford Richardson. The executive officers of that corporation as well as each of its subsidiaries and successors were and are the executors and trustees under that will and were and are familiar with its terms. Since this court holds that the legacy was to the trustees of the First Presbyterian Church in trust for its benevolent causes, it follows that such trustees had no power of sale of the corpus in the absence of authority under the will or an order of court granting it; that the individual defendants and the corporate defendant are fixed with knowledge of the limited power of the trustees, and that the attempted sale by the holders of the naked legal title in trust for others was void. Restatement of the Law of Trusts, Vol. 2, sec. 380; Mechanic's Bank v. Seton, 1 Pet. 299, 300, 7 L.Ed. 152; Union Pacific Railway Co. v. McAlpine, 129 U.S. 305, 9 S.Ct. 286, 32 L.Ed. 673; Albright v. Oyster, 140 U. S. 493, 494, 11 S.Ct. 916, 35 L.Ed. 534; Corporation Commission v. Merchants' Bank & Trust Co., 193 N.C. 696, 138 S.E. 22; Page v. Covington, 187 N.C. 621, 122 S.E. 481; Grace Church v. Ange, 161 N. C. 314, 77 S.E. 239.

■ The sale on March 16, 1923, of the last 225 shares was the culmination of negotiations by Mrs. Richardson with the deacons and elders of the First Presbyterian Church. She was eager to do what she could to expedite an enlargement of the church plant and surrendered her life estate to her children to enlarge the purchase price of the 3/100 interest in the Vick Chemical Co. The board of deacons and elders authorized and directed the trustees to convey their interest in consideration of $45,000. According to the evidence produced in this court the price was inadequate but I cannot say it was so grossly inadequate as to shock the conscience of the court under the rule stated in Firemen's Fund Ins. Co. v. Flint Hosiery Mills, 4 Cir., 74 F.2d 533. The church itself, in its congregational meeting, never authorized nor subsequently approved the sale but in the view I take of the case it had no authority to do either. It seems that the trustees, the deacons and elders and the defendants all acted on the supposition that the church owned the property and could sell it, and the trustees executed the bill of sale in that belief. They got the proceeds of the sale. $5,000 of it went to Davidson College. The benevolent causes of the church did not get the balance. It was used for local purposes of the church.

This court must compel defendants to restore the stock or its equivalent to the trustees for the benefit of the benevolent causes of the church. To this end it must follow the same into whosesoever hands it has passed with notice. Ward v. Brandt, 62 N.C. 71; People's Nat. Bank v. Waggoner, 185 N.C. 297, 117 S.E. 6; United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; Scott, Law of Trust, Vol. 2, sec. 294: "Not only can the beneficiaries maintain a suit against a transferee of trust property who is not a bona fide purchaser, but the trustee himself can maintain a suit against him. By the weight of authority it is held that the fact that the trustee committed a breach of trust in making the transfer, and that he is basing his suit upon his own voluntary and wrongful act, does not preclude his bringing suit, since in suing he is acting not for his own benefit, but for the benefit of the trustee."

The plaintiffs, therefore, are entitled to have the original 225 shares of stock or its equivalent transferred to the trustees of the First Presbyterian Church of Greensboro in accordance with the provisions of the will as here construed, and to recover of the defendants the dividends and other income earned by that stock but the money recovery must be off-set by the $45,000 paid to the trustees March 16, 1923, with interest thereon at 6%. It is insisted by the plaintiffs that they did not get the fund. The fund got into the hands of the trustees. If they failed to distribute it, the fault was theirs; certainly the defendants should not be required to pay it again. It would be wholly unconscionable to make defendants return the stock and

pay the dividends earned by it without allowing the off-set.

The opinion is already too lengthy. It is deemed unnecessary to discuss estoppel, for it seems inapplicable nor is there the slightest merit in the plea of laches. The life estate was not terminated until 1940 and the suit was then instituted.

A decree will be entered in accordance with the opinion.