ELIZABETH CARTER v. JOHN T. STRICKLAND AND WIFE, MYRTLE STRICKLAND.

(Filed 25 February, 1914.)

**1. Wills—Intent—Precatory Words—Trusts and Trustees.**

A will should be construed to effectuate the intent of the testator as gathered from the terms used by him therein; and precatory words will be given their ordinary and usual significance, unless from the terms and disposition of the will and the circumstances relevant to its proper construction it clearly appears that they are to be considered as imperative, and that the testator intended to create a trust.

**2. Same.**

A devise of certain lands to the testator's niece, by name, with "request" that she shall devise it to her daughter M. at her death, and it appears from other parts of the will that the testator knew apt words to create a trust, and in a subsequent clause of the will referred to the lands devised to the niece: *Held*, the niece, being nearer to the testator in blood, is evidently the primary object of his bounty, and under the terms of the will it was the testator's intent and purpose to devise the lands in fee to his niece, not raising a trust in favor of M., but referring the matter to the affectionate discretion of the mother. The position is not affected by an admission on the part of the devisee, the niece, that the testator was very fond of M., her daughter, had her to visit him frequently, and had contributed largely to her education.

CARTER *v.* STRICKLAND.

APPEAL by defendants from *Connor, J.,* at August Term, 1913, of NASH.

Civil action to remove a cloud from title, tried on pleadings and facts admitted.

From these facts it appeared that some years prior to institution of this suit one John A. Williams died testate in Warren County, having made his last will and testament, duly admitted to probate, and said will containing, among others, the following items, being those more relevant to the inquiry:

"(2) Item. I devise and bequeath to my niece, Elizabeth W. Carter, my plantation near Shady Grove on which I now reside, it being the farm willed to me by my brother, Thomas A. Williams, and not including any of my other land; and it is my request that my said niece, Elizabeth W. Carter, shall, at her death, devise said tract of land to her daughter, Myrtie E. Carter.

"(3) Item. I also give and bequeath to my said niece, Elizabeth W. Carter, the sum of $700, to be paid her by my executors out of my estate, and also all the crop and stock on the land devised her in Item 1, and also all the furniture in my house, except certain articles hereinafter excepted and bequeathed to my grand-niece, Myrtie E. Carter.

"(4) Item. I give and bequeath to my great-niece, Myrtie E. Carter, my walnut bedstead, and the bed and furniture belonging thereto, and also my center-table, walnut bureau, and dining-room press. And whereas my said great-niece, Myrtie E. Carter, holds my note for the sum of $1,500, it is my will that my executors, and they are hereby so directed, pay the amount of said note to my said great-niece out of my estate."

"(11) Item. I give and bequeath to my brother, Dr. Samuel A. Williams, his heirs and assigns, all the residue of my personal property of whatever kind, to be held by him in trust for the use of his children and to be given them at his death; but it is my will that my said brother, Samuel A. Williams, shall use the interest accruing from said money or property during his life to support his family"; that plaintiff, Elizabeth Carter, is

the niece referred to in the will, and *feme* defendant, Myrtie E. Strickland, is Myrtie E. Carter, and daughter of plaintiff, since intermarried with defendant John T. Strickland; that soon after the death of John A. Williams the plaintiff entered on the tract of land in question, the same being the farm near Shady Grove referred to in the will, and has since continued to occupy and possess the same, claiming the absolute and beneficial ownership under the terms of the will; that defendant Myrtle Strickland contends and claims: "That under the will plaintiff is absolute owner of the land only for life, and that beneficial ownership in remainder is in this defendant; that the word request, in Item 2 of the will, was there used by the testator in the imperative sense, and that plaintiff had no right to accept and hold the property under the will and at the same time refuse to carry out the request made in reference thereto."

In aid of this position, defendants further aver in the answer, and, for the purpose of the action the same is admitted to be true, "That the testator was especially devoted to the *feme* defendant, who stayed a great part of the time with him at his home in Warren County, and the expense of her education was largely borne by him," etc.

Upon these facts the court, being of opinion that plaintiff was absolute owner of the property in fee, entered judgment as prayed by plaintiff, and defendant excepted and appealed.

*Bunn & Spruill for plaintiff.*
*Jacob Battle for defendant.*

HOKE, J., after stating the case: Some of the earlier English cases, and they have been followed by decisions in this country, are to the effect that a trust will be engrafted or imposed upon an estate, absolute in terms, or upon its holder, by reason of precatory words in a will whenever "the objects of the precatory language are certain and the subject of the recommendation or wish is also certain"—a position supposed to best effectuate the intent of the testator. A consideration of the later cases, however, will show that, in the decisions referred to, the principle has been too broadly stated, and it is now the prevailing doc-

trine, certainly so in this jurisdiction, that such words will be given their ordinary significance, and will not have the effect, as stated, unless from the terms and dispositions of the will and the circumstances relevant to its proper construction it clearly appears that they are to be considered as imperative and that the testator intended to create a trust. *Fellowes v. Durfey,* 163 N. C., 305; *Hayes v. Franklin,* 141 N. C., 599; *St. James Church v. Bagley,* 138 N. C., 384; *Batchelor v. Macon,* 69 N. C., 545; *Alston v. Lea,* 59 N. C., 27; *Post v. Moore,* 181 N. Y., 15; *Foose v. Whitmore,* 82 N. Y., 405; *Burns v. Burns,* 137 Fed., 781; *Williams v. Worthington,* 49 Md., 572; *Williams v. Baptist Church,* 92 Md., 497; *Aldrich v. Aldrich,* 172 Mass., 10; *Orth v. Orth,* 145 Ind., 184; Pomeroy Eq. Jurisprudence (3d Ed.), secs. 1015-1016; 22 A. and E. Enc., p. 1163.

In the recent case of *Fellowes v. Durfey* the *Chief Justice* quotes with approval from *Burns v. Burns* as follows: "The tendency of the modern decisions, both in England and in this country, is to restrict the practice which deduces a trust from the expression by the testator of a wish, desire, or recommendation regarding the disposition of property absolutely bequeathed"; and in *St. James Church v. Bagley, Connor, J.,* delivering the opinion, said: "Formerly, the rule in England was that whenever property was given, coupled with expressions of request, hope, desire, or recommendation that the person to whom it is given will use or dispose of the same for the benefit of another, the donee will be considered a trustee for the purpose indicated by the donor. Such expressions were regarded as *prima facie* imperative. 'But within the last few years the doctrine has changed, and the English rule is now that precatory words are *not* to be regarded as imperative unless it is plain from the context that the testator so intended them. *Prima facie,* a mere request or an expression of hope, confidence, or expectation does not import a command,' citing Bispham Eq. (6 Ed.), p. 117."

The case of *Colton v. Colton,* 127 U. S., 300, to which we were referred by counsel, is in approval of the same general principle. True, in *Colton's case* the trust was upheld, the

Court laying much stress on facts *dehors,* establishing a moral obligation for support and maintenance on the part of the testator and tending to show that the claimants were an aged mother and sister largely dependent on his bounty, and giving color to certain phraseology of the will permitting construction; but, on the question presented here, it was held, among other things, that, "When property is given by will absolutely and without restriction, a trust is not to be lightly imposed upon mere words of recommendation and confidence," etc., and *Associate Justice Matthews,* delivering that opinion, refers to an opinion of *Chief Justice Gray* for a correct statement of the doctrine, in these terms: "The existing state of the law on this question, as received in England, and generally followed in the courts of the several States of the Union, is well stated by *Gray, C. J.,* in *Hess v. Singler,* 114 Mass., 56, 59, as follows: 'It is a settled doctrine of courts of chancery that a devise or bequest to one person, accompanied by words expressing a wish, entreaty, or recommendation that he will apply it to the benefit of others, may be held to create a trust, if the subject and the objects are sufficiently certain. Some of the earlier English decisions had a tendency to give to this doctrine the weight of an arbitrary rule of construction. But by the later cases in this and in all other questions of the interpretation of wills the intention of the testator, as gathered from the whole will, controls the court; in order to create a trust, it must appear that the words were intended by the testator to be imperative; and when property is given absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence.' "

A correct application of the principle, as stated and sustained by these decisions, is in full support of his Honor's ruling. The testator was evidently a man of intelligence, or he acted in this instance under very intelligent advice. A perusal of Item 11 of his will shows that he knew the use of apt and efficient words to create a trust when he so desired. In Item 2 he first devises to the plaintiff his home plantation in terms of absolute ownership, and again in Item 3 he bequeaths to her the sum of $700

and all crops and stock on the land, again referring to it as the land devised to her. Nearer to him in blood, she is evidently the primary object of his bounty, and we are clearly of opinion that the "request" in favor of defendant, appearing in 2d item of the will, is not sufficient to raise a trust in the property, but the testator only intended to refer the matter to the affectionate discretion of the devisee, the present plaintiff.

· The allegations of the answer, "That the testator was especially devoted to the *feme* defendant, who stayed a great part of her time with him at his home place, and that the expenses of her education were largely borne by him," and admitted by plaintiff, for the purposes of this action are not sufficient to alter or affect the result. They show no state of dependence on the part of the *feme* defendant, nor do they establish any moral claim to further support, but are entirely consistent with a disposition of the property in favor of the plaintiff, who was the defendant's own mother.

On perusal of the will and the facts in evidence, we are of opinion, as stated, that plaintiff is entitled to the property in absolute ownership, and that the decree protecting her in the possession and enjoyment of such an estate must be

Affirmed.