GEORGE LAWS, Executor, et al., v. BEATRICE CHRISTMAS et al.

(Filed 29 October, 1919.)

1. **Wills—Interpretation—Intent—Precatory Words.**

Words in a will which, standing alone, may be construed as precatory and not binding, contrary to the will or desire of the person designated, will be construed as imperative upon him when by a proper interpretation of the entire instrument the testator's intent appears that they should be so.

2. **Same—Testacy—Presumptions—Trusts—Uses.**

A testatrix used in her will the word "give" in the disposition of certain personalty, and the same word in regard to a house and lot to her sister, also to her "all the money I have in bank at my death; I want her well provided for a good sum and board." Also, after the death of the sister, "I want my house and lot to be sold, the money put in bank to go to her husband for the education of his children." *Held*, the intent of the testator in the use of the word "want" was that it should be imperative, which would avoid the presumption against intestacy, the husband to use the proceeds of the sale of the house and lot, in the bank. as trustee, for the declared purpose of the testatrix, that it should be used for the education of his children.

3. **Wills—Trusts—Funds—Payment to Clerk—Receivers—Parent and Child.**

Where the testatrix has devised to the husband of her sister the proceeds of sale of a certain house and lot to be placed in bank for the education of his children, and it appears from his own allegation that he cannot give bond for the protection of the *cestuis que trustent*, whom he has not seen for a period of years and against whose interest he has claimed, it is proper for the court to see that the funds are secured for the purposes intended, in this case by payment thereof into the hands of the clerk of the Superior Court as receiver.

APPEAL by plaintiff from *Stacy, J.,* at the September Term, 1919, of ORANGE.

This is an action by the executor of Louisa Frye and R. L. Christmas against the children of the said Christmas to obtain a construction of the will of the said Frye, and to determine the rights in the proceeds of the sale of a certain lot of land.

The will is in the following words: "I, Louise Frye, being of sound mind and memory, do make this, my last will and testament, as follows: I desire my body to be decently buried in the new cemetery plot on the south side, designated by Mr. George Laws, who will attend to my burial, and for his services and furnishing the coffin I give to him my gold watch, now in his possession. I give to my sister, Eliza Christmas, the following household articles to be sold: 1 bureau, 1 sideboard, 1 stove, 1 new feather-bed, and pillow of down.

LAWS *v.* CHRISTMAS

"I also give to my sister, Eliza Christmas, my house and lot, at depot, during her lifetime; I also give my sister Eliza all the money I should have in bank at my death. I want her well provided for a good sum and board.

"After my sister Eliza's death, I want my house and lot to be sold, the money to be put in bank to go to Robert L. Christmas, and used for the education of his children. I appoint Mr. George Laws executor to this my last will and testament.

"Witness my hand and seal, this 26 June, 1906.

                                        LOUISA FRYE. (Seal.)"

In 1909, about three years after the death of the testatrix, the plaintiff, R. L. Christmas, separated from his wife and children, and he has not seen his children since then, and does not know where they are. The wife of R. L. Christmas is dead.

The lot referred to in the will has been sold, and the controversy is over the proceeds of the sale, R. L. Christmas contending that the proceeds of sale are given to him in the will, and the defendants that a trust is declared in their favor.

His Honor rendered judgment holding that there was a trust in favor of the defendants, and as the plaintiff Christmas was unable to give a sufficient bond for the security of the funds, he ordered that it be paid to the clerk of the Superior Court of Orange County as the receiver for the defendants, and the plaintiff excepted and appealed.

*T. C. Carter for plaintiff.*
*A. H. Graham and John W. Graham for defendant.*

ALLEN, J. The words which give rise to the present controversy are "want" and "used for the education of his children," the plaintiff, R. L. Christmas, contending that there was an absolute gift of the money to him when the testatrix said "to go to R. L. Christmas," and that the word "want" is precatory and merely expressive of a desire or wish, while the defendants, his children, insist that a trust is declared in their favor.

The first difficulty in the way of the position taken by the plaintiff is that it proves too much, since it is not reasonable to hold that the word "want" relates to the sale of the lot, and then, passing over two dispositions of the property, say it affects the provision for the education of the children, without also holding that it pervades the whole item, giving character to each provision, so that the will would read, "I want my house and lot to be sold;" "I want the money to be put in bank;" "I want it to go to Robert L. Christmas;" "I want it to be used for the education of his children," and under this construction, if held to be

precatory and not imperative, no one would take anything under the item of the will, and the testatrix would be intestate as to the remainder in fee in the lot, which is contrary to the presumption that "every testator, is presumed to intend to dispose of all his estate, so as not to die intestate as to any part" (*Foust v. Ireland,* 46 N. C., 187; *Foil v. Newsome,* 138 N. C., 119), and to the language of the will, which manifests a purpose to make some disposition of the property.

Why mention it at all if she did not intend to create some right or impose some duty in regard to it?

The fact that she refers to it shows that she had the remainder interest in mind, and it is reasonable to conclude she would have remained silent if she did not intend to devise it.

We cannot adopt this view of the plaintiff, and, as it appears to us, but one of two constructions is permissible.

The testatrix either intended to express the wish that the lot be sold, and to make explicit disposition of the fund, in which event the word "want" would only refer to the sale of the lot, or that the whole devise or bequest should be imperative although precatory words were used.

The effect of precatory words in a will has been considered in several recent decisions, and while the older English doctrine that "whenever property was given, coupled with expressions of request, hope, desire, or recommendation, that the person to whom it is given will use or dispose of the same for the benefit of another, the donee will be considered a trustee for the purpose indicated by the donor," has not been followed, the principle is recognized in all that, although in form precatory, the language will be held to be imperative and to impose a trust if the intent clearly appears.   *Carter v. Strickland,* 165 N. C., 70; *Hardy v. Hardy,* 174 N. C., 507.

The Wisconsin Court states the controlling principles, in *Knox v. Knox,* 59 Wis., 172, as follows:

"First.   'It is not necessary that technical language should be used to create a trust.   It is enough that the intention is apparent.'   1 Jarm. Wills (5th ed.), 385, and note.

"Second.   'That precatory words used in a will—that is, words of recommendation, entreaty, requests, wish, or expectation, addressed to a devisee or legatee, may be sufficient to create a trust in favor of the person or persons in whose favor such expressions are used.'   1 Jarm. Wills (5th ed.), 385; Lewin Trusts, 118; 2 Story Eq. Jur., par. 1068, 1068a; Hill Trustees, 71; 2 Redf. Wills, 410, 411.

"Third.   In order to determine whether precatory words in a will create a binding trust, 'the real question always is whether the wish, desire, or recommendation expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely

an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion.' 2 Redf. Wills, 416; *Williams v. Williams,* 1 Sim. (N. S.), 358; Hill Trustees, 114; 2 Story Eq. Jur. (12th ed.), par. 1068b, and cases cited.

"Fourth. In determining that precatory words in a will create a trust the courts give great weight to the fact that the person or object to which the precatory words apply is clearly pointed out, and the quantum of the estate to be given to such person or object is also clearly defined. 1 Jarm. Wills, 396; 2 Redf. Wills, 416; 2 Story Eq. Jur., par. 1070, 1071."

Here we have the persons clearly pointed out, if the precatory words apply to the provision for the children, the quantum of the estate given is clearly defined, and that the testatrix intended to control the fund appears from the entire absence of words of discretion in connection with the gift to the plaintiff, and that he takes it for a specific purpose.

The testatrix gave the lot to her sister for life, the remainder in fee is not referred to except in the item before us; there is no reason for mentioning it except to dispose of it, and, in our opinion, the language used is sufficient to authorize a sale and to dispose of the proceeds.

Does it impress the fund with a trust in favor of the children?

"It must be conceded that it is not necessary for the valid declaration of a trust that any peculiar language be used" (*St. James v. Bagley,* 138 N. C., 398). "The intent is what the Court looks to." *Blackburn v. Blackburn,* 109 N. C., 489.

"No technical language, however, is necessary in the creation of a trust, either by deed or will. It is not necessary to use the words 'upon trust' or 'trustee,' if the creation of a trust is otherwise sufficiently evident. If it appears to be the intention of the parties from the whole instrument creating it that the property is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title if it is capable of lawful enforcement." *Colton v. Colton,* 127 U. S., 310.

"It is sufficient if the language used shows the intention to create a trust, clearly points out the property, the disposition to be made of it, and the beneficiary." *Witherington v. Herring,* 140 N. C., 497.

All of these requirements are present if the intent of the testatrix is made manifest.

It is significant that the testatrix required the money "to be put in bank," instead of giving it to the plaintiff, which would have been the natural course if she had intended him to have the beneficial interest. It is also worthy of note that in the preceding parts of the will she uses the terms "I give" four times, showing she knew what it meant, and particularly in connection with the gift of the money in the bank at the

time of her death, but when she makes disposition of the proceeds of the sale of the lot in bank, this is "to go to" the plaintiff, which is less certain, and at least ambiguous.

And it is to go to him coupled with the purpose in the mind of the testatrix, "and used for the education of his children."

Use and trust are in many respects synonymous, and when property is given to be used for a particular person it would require great refinement to distinguish this from a gift to his use, in trust for him, or for his benefit.

In *Jarrell v. Dyer,* 170 N. C., 178, the language in the will was: "I, Emma J. Simmons, being of sound mind, do hereby will and bequeath to my mother, Pauline E. Jarrell, all the property recently deeded to me by her; also all my other property, that she may administer it to the use of my children," and the Court said of this provision: "The testatrix evidently bequeathed to her mother all of her property, including that which had been conveyed to her by her mother, as well as that which she derived from other sources, in trust, that the mother may use, control and administer it for the benefit of the testatrix's children."

We cannot think the construction would have been changed if the testatrix had said "for the use of my children" or "to be used for them."

We are, therefore, of opinion a trust is declared in favor of the children, and, if so, the court had the right, and it was its duty, to see that the fund was secured, as it did by its order, as the plaintiff was unable to give bond, had not seen his children for ten years, and does not know where they are, and says, in his complaint, "that under any circumstances it will be impossible at this time for him to carry out the wish and even a trust, if the court should decide that he was a trustee."

"Under the old equity system the chancellor had power to order one who held the legal title, in trust for another, to execute a deed. So he had power to order a defendant, who held a fund in trust, whether it consisted of bonds or of money, to pay 'the fund' into court, to the end that the fund should be put under the protection of the court. This power the court still has under the new system in all cases where there is the relation of trustee and *cestui que trust,* and the land or the fund is, in contemplation of a court of equity, *the property* of the plaintiff in an action brought to enforce the equity, and an order made for the execution of a deed or the payment of the fund into court is a lawful order." *Daniel v. Owen,* 72 N. C., 342.

Affirmed.