CITIZENS NATIONAL BANK, CONCORD, NORTH CAROLINA, AND JOHN A. CUNNINGHAM, TRUSTEES UNDER THE WILL OF JOSEPH F. CANNON (JR.) v. GRANDFATHER HOME FOR CHILDREN, INCORPORATED; OBSERVER FRESH AIR CAMP, INCORPORATED; CITY OF CHARLOTTE, NORTH CAROLINA, AND B. IRVIN BOYLE, GUARDIAN AD LITEM

No. 98

(Filed 28 January 1972)

1. Wills § 28— construction of a will — intent of testator

It is the duty of the court to construe provisions of a will so as to discover the intent of the testator and to give effect to that intent if it is not in contravention of some established rule of law or public policy; such intention is to be determined by an examination of the will, in its entirety, in the light of all surrounding facts and circumstances known to testator.

2. Trusts § 5— construction of trust — distribution of portion of trust property

Where an item of testator's will provided for the manner in which trustees should "administer the remaining *principal*" of a trust upon the death of testator's wife, and Paragraph (c) thereunder provided that "Twenty-five percent *thereof* shall be paid over to the City of Charlotte, North Carolina, to be used by it in furnishing facilities for and in the furtherance of aviation," it was *held* that testator intended for the trustees to transfer to the city, free and clear from further control by the trustees, twenty-five percent of the trust properties held by them at the time of the death of testator's wife.

3. Trusts § 1— transfer of trust assets to beneficiary for specific use — accountability to trustees

Provision of a will directing trustees, upon the death of testator's wife, to transfer a portion of the trust properties to a city "to be used by it in furnishing facilities for and in the furtherance of aviation" did not impress a further trust upon the properties so as to require the city to account to the trustees for its use of the properties.

4. Trusts § 10— extraordinary expenses in trusts administration — payment out of principal

Apart from statute and apart from a contrary provision in the trust instrument, extraordinary expenses incurred in the administration of a trust, including the expense of a proceeding brought by the trustee to obtain a construction of the trust instrument and the direction of the court as to the distribution of the trust properties, are usually payable out of principal.

5. Costs § 3; Trusts § 10— trustees' action to construe trust — payment of costs — discretion given trustees

In this action instituted by trustees to obtain a declaratory judgement directing them in the administration of a trust created by a will, the trial court erred in directing that the costs of the

action be paid "out of the assets constituting the corpus or principal of the trust estate," where the will authorized the trustees to determine "how receipts and disbursements shall be credited, charged or apportioned as between income and principal," since the court has deprived the trustees of the discretion conferred upon them by the testator in accordance with G.S. 37-2.

APPEAL by plaintiffs and by guardian ad litem from *Collier, J.,* at the 8 February 1971 Session of CABARRUS, heard prior to determination by the Court of Appeals.

Plaintiffs, as trustees under the will of Joseph F. Cannon, Jr., instituted this action for a declaratory judgment directing them in the administration of the trust created by the will. The defendant Boyle was appointed guardian ad litem to represent unknown persons who may be or become interested in or entitled to assets of the trust.

The testator died 2 October 1942. He was not survived by any lineal descendant. His wife, who survived him, died 13 April 1970. At her death the trustees were in possession of trust assets, consisting of corporate stocks and bonds, then valued at $1,740,659.06.

The will devised and bequeathed to the trustees seventy-five percent of the testator's residuary estate and provided for the disposition of the income from the trust properties during the life of the testator's wife. The provision of the will here in question reads as follows:

"(3) After the death of my wife, Nella Douglas Cannon, if there be none of my children or grandchildren capable of taking under the foregoing provisions, my Trustees shall administer the then remaining principal of this seventy-five percent portion then remaining in their hands in the following manner:

"(a) One-half thereof shall be set aside in trust for the benefit of the Grandfather Orphanage for Children, located at Banner Elk, North Carolina, and the income therefrom shall be paid in quarterly installments to the proper officials of said Orphanage so long as the Orphanage continues to operate and function as an Orphanage for children, and in the event that the Orphanage shall discontinue operation, then the proceeds of the trust then in the hands of said Trustees, shall be paid to the City of

Charlotte, North Carolina, to be used by it as set forth in Subparagraph (c) hereof.

"(b) Twenty-five percent thereof shall be held for the benefit of the Observer Fresh Air Camp, Inc., of Charlotte, North Carolina, and the income therefrom shall be paid over in quarterly installments to the proper officials thereof so long as said organization operates a camp for boys on a charity basis, and in the event that the Observer Fresh Air Camp, Inc., shall discontinue operation, then the proceeds of the trust then in the hands of said Trustees shall be paid to the City of Charlotte, North Carolina, to be used by it as set forth in Subparagraph (c) hereof.

"(c) Twenty-five percent thereof shall be paid over to the City of Charlotte, North Carolina, to be used by it in furnishing facilities for and in the furtherance of aviation, and in the event any portion of the trust estates mentioned in the Subparagraphs (a) and (b) next above set forth, shall be payable to the City of Charlotte, the same shall be used in a similar manner."

The matter being submitted to the superior court on stipulations as to the facts, the court entered judgment finding the facts to be as stipulated and setting forth conclusions of law.

Among the facts so stipulated and found are these (summarized and renumbered):

1. In 1914, there was established at Banner Elk, North Carolina, an orphanage called "Grandfather Orphanage for Children." It operated under that name until approximately 1945, when its name was changed to "Grandfather Home for Children." (The testator's will was executed 2 May 1942.) In 1957, it was incorporated under the name "Grandfather Home for Children, Inc." The defendant, Grandfather Home for Children, Inc., continued to operate the orphanage as an eleemosynary institution, in the same location and in the same manner as its predecessors, and presently has 63 children in residence therein. There has never been another institution operating in Banner Elk, North Carolina, under the name of "Grandfather Orphanage for Children," "Grandfather Home for Children," or any other name similar thereto.

2. In 1937, Curtis B. Johnson, publisher of the Charlotte Observer, acquired land and established thereon a camp for

boys called "The Observer Fresh Air Camp." In the same year he and others organized and incorporated the "Observer Fresh Air Camp, Incorporated," which presently exists as a corporation of this State. The records of the Secretary of State do not disclose the incorporation in this State of a corporation by the name of "Observer Fresh Air Camp, Inc." Also, in 1937, the land on which the above mentioned camp was established was conveyed to Observer Fresh Air Camp, Incorporated, and is presently owned by it. In 1946, all of the outstanding memberships in Observer Fresh Air Camp, Incorporated, were transferred to the Y.M.C.A. of Charlotte. The Observer Fresh Air Camp, Incorporated, is now operating a camp for boys without profit to the corporation and is conducting a camping program which is designed to provide wholesome outdoor recreation beneficial to the physical and mental development of the campers.

3. The City of Charlotte presently owns and operates, upon land owned by it, a municipal airport in Mecklenburg County known as Douglas Municipal Airport.

Upon its findings of fact, the court concluded as follows (summarized and renumbered) :

1. The defendant, Grandfather Home for Children, Incorporated, is the same entity as the "Grandfather Orphanage for Children" referred to in the will and is entitled to all benefits provided for "Grandfather Orphanage for Children" thereby. It now operates and functions as an orphanage for children so as to entitle it to be paid the income from the portion of the trust estate provided by the above quoted Paragraph (3) (a) of the will.

2. Observer Fresh Air Camp, Inc., one of the beneficiaries named in the will, is the same entity as the defendant Observer Fresh Air Camp, Incorporated. This defendant operates a camp for boys on a charity basis and is entitled to be paid the income from the portion of the trust estate provided in the above quoted Paragraph (3) (b) of the will.

The court further concluded as follows:

"7. That the City of Charlotte, North Carolina, is entitled to the benefits conferred by Item VI, A(3) (c) [above quoted] of said Will, and that said City of Charlotte is entitled to a distribution in kind of that portion of the prin-

cipal or corpus of the trust estate referred to therein remaining in the hands of the aforesaid Trustees at the time of the death of Nella Douglas Cannon."

The court thereupon ordered and adjudged as follows:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DE-CREED as follows:

"1. That after paying or providing for the payment of the costs of this action the Trustees shall administer the then remaining principal of the seventy-five per cent (75%) portion specified in Paragraph VI, A(3) of the Will, as of the date of death of Nella Douglas Cannon on April 13, 1970, together with the accruals of the principal and net income since said date, in the following manner:

"(a) One-half (1/2) thereof shall be set aside in kind IN TRUST for the benefit of Grandfather Home for Children, Incorporated, located at Banner Elk, North Carolina, and the net income attributable to such share subsequent to April 13, 1970, shall be paid in quarterly installments to the proper officials of said orphanage so long as the Orphanage continues to operate and function as an orphanage for children, in accordance with the provisions of the Will of Joseph F. Cannon (Jr.).

"(b) Twenty-five per cent (25%) thereof shall be set aside in kind IN TRUST for the benefit of Observer Fresh Air Camp, Incorporated, of Charlotte, North Carolina, and the net income attributable to such share subsequent to April 13, 1970, shall be paid over in quarterly installments to the proper officials thereof so long as said organization operates a camp for boys on a charity basis in accordance with the provisions of the Will of Joseph F. Cannon (Jr.).

"(c) That the remaining twenty-five per cent (25%) of the principal shall be distributed and paid in kind to the City of Charlotte, free and discharged of trust, together with twenty-five per cent (25%) of the net income accumulated thereon by said trust subsequent to April 13, 1970, for use by it in accordance with the terms of the Will of Joseph F. Cannon (Jr.).

"(d) That the costs of this action as finally determined shall be paid by the Trustees out of the assets

constituting the corpus or principal of the trust estate being administered under Item VI, A of the Will, and the Trustees are authorized and directed to liquidate such of said principal assets as they may deem necessary in the exercise of their discretion to pay such costs.

"(e) That the costs of this action shall be taxed by separate order of the Court.

"(f) That this cause be retained for further order of Court."

From this judgment the plaintiffs appealed, assigning as error the above quoted Conclusion of Law No. 7, the above quoted Paragraph (c) of the judgment, the above quoted Paragraph (d) of the judgment and the signing of the judgment.

The defendant guardian ad litem also appealed, assigning as error the above quoted Conclusion of Law No. 7, the above quoted Paragraph (c) of the judgment and the signing of the judgment. He contends that the provisions of Paragraph (c) of the above quoted portion of the will are inconsistent with the provisions of Paragraphs (a) and (b) thereof and that the judgment is erroneous in that it fails to make provisions requiring the city to make a future accounting with reference to its use or disposition of the portion of the trust funds directed by the judgment to be distributed to the city.

*Carson and Reynolds for Grandfather Home for Children, Incorporated.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston for Observer Fresh Air Camp, Incorporated.*

*Henry W. Underhill, Jr., and W. A. Watts for City of Charlotte.*

*B. Irvin Boyle, Guardian ad Litem.*

*Williams, Willeford & Boger and Clyde L. Propst, Jr. for Citizens National Bank and John A. Cunningham, Trustee.*

LAKE, Justice.

[1] It is elementary that it is the duty of the court to construe provisions of a will so as to discover the intent of the testator and to give effect to that intent if it is not in contravention

of some established rule of law or public policy. Such intention is to be determined by an examination of the will, in its entirety, in the light of all surrounding facts and circumstances known to the testator. *Trust Co. v. Dodson,* 260 N.C. 22, 131 S.E. 2d 875; *Little v. Trust Co.,* 252 N.C. 229, 113 S.E. 2d 689; *Moore v. Langston,* 251 N.C. 439, 111 S.E. 2d 627; *Trust Co. v. Taliaferro,* 246 N.C. 121, 97 S.E. 2d 776; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17.

Item VI of the will before us divides the residuary estate into two parts and devises and bequeaths these to the plaintiffs upon two separate trusts. The trust here in question is established by Part A of Item VI, the properties of this trust consisting of seventy-five percent of the residuary estate. After making provisions for the distribution of the income from these trust properties during the life of the testator's wife, Nella Douglas Cannon, and for the distribution of the income and principal thereof after her death if she should be survived by children or grandchildren of the testator, Paragraph (3) of Item VI directs what is to be done by the trustees upon the death of Mrs. Cannon if, as proved to be the case, there were no children or grandchildren of the testator "capable of taking under the foregoing provisions." No other portion of the will sheds light upon the intent of the testator as expressed in this Paragraph (3) of Part A of Item VI of the will. The portion pertinent to this appeal reads as follows:

"(3) After the death of my wife, Nella Douglas Cannon, * * * my Trustees shall administer the then remaining *principal* of this seventy-five percent portion then remaining in their hands in the following manner: (Emphasis added.)

"(c) Twenty-five percent *thereof* shall be paid over to the City of Charlotte, North Carolina, to be used by it in furnishing facilities for and in the furtherance of aviation * * *." (Emphasis added.)

[2]  Very plainly this portion of the will directs the trustees to pay over to the city, upon the death of Mrs. Cannon, twenty-five percent of the principal of the trust properties then in the hands of the trustees. In contrast, Subparagraph (a) directs that one-half of the principal held by the trustees at the death of Mrs. Cannon be "set aside in trust" for the benefit of the

Grandfather Orphanage for Children [Grandfather Home for Children, Incorporated] and that the income therefrom be paid to it. Similarly, Subparagraph (b) directs that twenty-five percent of the principal held by the trustees at Mrs. Cannon's death be "held for the benefit of" the Observer Fresh Air Camp, Inc., [Observer Fresh Air Camp, Incorporated] and that the income therefrom be paid over to the officials thereof. The testator chose his words carefully in these three subparagraphs. Obviously, he intended for the trustee to transfer to the city, free and clear from further control by these trustees, twenty-five percent of the trust properties held by them at the time of Mrs. Cannon's death. Subsequently received income, attributable to such twenty-five percent of the properties would, of course, follow this portion of the properties and be properly distributable to the city.

[3] The statement in Subparagraph (c) that the properties so paid over to the city are "to be used by it in furnishing facilities for and in the furtherance of aviation" do not have the effect of impressing a further trust upon the properties so as to require the city to account to these plaintiffs for its use of the properties. This provision in the will is not sufficient to create a new trust. *Williams v. Thompson*, 216 N.C. 292, 4 S.E. 2d 609. Consequently, there was no error in the court's Conclusion of Law No. 7 or in Subparagraph (c) of the judgment ordering that this twenty-five percent of the principal be paid to the city "free and discharged of trust," together with the income accumulated thereon subsequent to the death of Mrs. Cannon.

We come now to the portion of the judgment directing that the costs of this action be paid "out of the assets constituting the corpus or principal of the trust estate being administered under Item VI, A of the Will." The judgment directs the costs to be paid from the principal in the hands of the trustees prior to transfer of properties to the city. Thus, one-fourth of the burden of this expense is to be borne by the city.

G.S. 6-21 provides that costs, including reasonable attorneys' fees determined and allowed by the court, "shall be taxed against either party, or apportioned among the parties, in the discretion of the court" in "any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and duties of parties thereunder."

Item VII, Paragraph (2), of the will of Mr. Cannon provides that the trustees "are hereby empowered to determine how receipts and disbursements shall be credited, charged or apportioned as between income and principal and their decision in this respect shall be final and not subject to question by any beneficiary under this trust."

G.S. 37-2, which is part of the Uniform Principal and Income Act, provides:

> "*Application of chapter; powers of settlor.*—This chapter shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen, in all cases where a principal has been established with, or, unless otherwise stated hereinafter, without the interposition of a trust; *except that* in the establishment of the principal provision may be made touching all matters covered by this chapter, and *the person establishing the principal may himself* direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or *grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this chapter.*" (Emphasis added.)

Consequently, G.S. 37-12, providing for the allocation of expenses, including court costs and attorneys' fees as between income and principal, has no application to the present case.

G.S. 1-263 provides: "In any proceeding under this article [declaratory judgments] the court may make such award of costs as may seem equitable and just." This section of G.S. Chapter 1 was not repealed by the enactment of G.S. Chapter 1-A. See: Session Laws of 1967, Chapter 954, §§ 4 and 5; G.S. 1A-1, Rule 57.

[4] Apart from statute and apart from a contrary provision in the trust instrument, extraordinary expenses incurred in the administration of a trust are usually payable out of principal. Scott on Trusts, 2d Ed, § 233.3, p. 1755. The expense of a proceeding brought by the trustee to obtain a construction of the trust instrument and the direction of the court as to the distribution of the trust properties is, ordinarily, such an extraordi-

nary expense. See, Bogert, Trusts and Trustees, 2d Ed, § 809, p. 180.

*Little v. Trust Co., supra,* was a suit for a declaratory judgment to construe the provisions of a will establishing a trust. The will, like the one now before us, authorized the trustees named therein to determine "what expenses or other charges shall be charged against income and what against principal." The trial court ordered the costs of the proceeding, including attorneys' fees, paid out of the corpus of the trust. The trustee, appellant, excepted to the allowance of attorneys' fees as part of the costs so to be paid. As to that point, this Court said: "In the case *sub judice* the taxing of costs, the inclusion therein of attorneys' fees and the fixing of reasonable counsel fees are matters within the sound discretion of the trial court. * * * We find no grounds upon which to disturb the orders of the court with respect to costs and attorneys' fees."

It appears from the report of the decision in *Little v. Trust Co., supra,* see pp. 254-255, that the question there presented to this Court concerning costs and attorneys' fees related to the amount of the fees allowed, rather than to the allocation of the expense to income or to principal. As the court pointed out, *Little v. Trust Co., supra,* was "fraught with unusual difficulties." The principal points of contention were other than the allocation of the costs of the litigation between principal and income. Concerning the propriety of the trustee's allocation to principal of property received by it, by virtue of a subtraction from a beneficiary's distributive share of income pursuant to a provision of the will, this Court said:

> "We agree that the allocation of this fund to the *corpus* of the trust estate was proper. 'Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.' Restatement of the Law on Trusts, sec. 187, p. 479. '. . . . [I]n general, where a will or trust instrument purports to confer upon an executor or trustee the power to determine what is income and what is principal, the courts . . . have sustained the exercise of the power by such executor or trustee, in the absence of fraud or arbitrary action . . .' Annotation: 118 A.L.R., Income or Principal, p. 843."

Scott on Trusts, 2d Ed, § 233.5, p. 1775, states:

"*Terms of the Trust.*

"By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules."

In Bogert, Trusts and Trustees, 2d Ed, § 802, it is said:

"*Control by Settlor.*

"The settlor may make provisions as to the sources from which the trustee should pay expenses and these will be controlling, unless the court finds that they frustrate or handicap the trustee in achieving the accomplishment of the trust purposes and therefore it permits or directs the trustee to act otherwise.

"*Effect of Grant of Discretion to Trustee.*

"If a trustee is given discretion by the terms of the trust or a statute or court order as to the charging of expenses to the income or capital account, a decision reached by him will be binding, unless there was an abuse of the discretion by reason of the fact that the trustee acted arbitrarily, in bad faith, for the benefit of others than the cestuis of the trust, or otherwise in opposition to the settlor's purposes."

[5] G.S. 37-2, above quoted, expressly authorizes the settlor of a trust to provide therein that the trustee may in his discretion direct the apportionment of expenses as between income and principal. The will creating the trust now before us

so provided. The court, without any finding of an abuse of discretion by the trustees or any bad faith on their part, has deprived them in this instance of the discretion conferred upon them by the testator. In this there was error. Any intimation to the contrary in *Little v. Trust Co., supra*, is hereby disapproved.

In oral argument of the appeal, we were advised that there are accumulations of income presently in the hands of the trustees from which the costs of this action can be paid. Since the funds directed to be paid to the City of Charlotte include both its share of the principal and its share of the accumulated income, it can make no difference to the City of Charlotte how the costs of this proceeding are allocated as between income and principal. The only practical effect of such allocation is with reference to the trusts for the benefit of the Grandfather Home for Children, Incorporated, and the Observer Fresh Air Camp, Incorporated. We detect no reason for depriving the trustees of the discretion which the testator conferred upon them with reference to these two continuing trusts.

Nothing herein shall be deemed to deprive the court of the authority conferred upon it by G.S. 6-21 to tax the costs to the plaintiff trustees and to determine the amount of attorneys' fees which are to be made a part of the costs.

The judgment of the superior court is hereby modified by deleting from Paragraph (d) thereof the words, "constituting the corpus or principal," and the words, "and the Trustees are authorized and directed to liquidate such of said principal assets as they may deem necessary in the exercise of their discretion to pay such costs." So modified, Paragraph (d) of the judgment will read: "(d) That the costs of this action as finally determined shall be paid by the Trustees out of the assets of the trust estate being administered under Item VI, A of the Will." Except as herein modified, the judgment of the superior court is affirmed.

Modified and affirmed.