YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF ASHEVILLE, NORTH CAROLINA, INC. v. ROBERT MORGAN, ATTORNEY GEN-ERAL, STATE OF NORTH CAROLINA

No. 125

(Filed 16 June 1972)

1. Trusts § 4— charitable trusts — cy pres doctrine — statute

When there is a charitable trust, bequest or devise evidencing a general charitable intent by the grantor, and the specific, express purpose cannot be fulfilled because of illegality, impossibility or impracticability, the Charitable Trust Administration Act empowers the court, in the absence of an alternative disposition, to modify the trust so as to apply the fund to a purpose as nearly as possible like the originally expressed purpose. G.S. 36-23.2.

2. Trusts § 4— charitable trusts

Generally, when a trust has been created for any lawful purpose which promotes the well-being of mankind and does not contravene public policy, it is charitable in its purpose.

3. Trusts § 1— creation of trust

While a trust is based upon a direct declaration or expression of intent, no particular words are necessary to create a trust if the purpose to create is evident.

4. Wills § 28— intent of testatrix

In construing a will, the intent of the testatrix must be given effect unless contrary to public policy or some rule of law; such intent is determined by examining the will in the light of all surrounding facts and circumstances known to the testatrix.

5. Wills § 34— presumption of devise in fee — personalty

The statutory presumption that a devise is in fee applies to the disposition by will of both real and personal property. G.S. 31-38.

6. Trusts § 4— conveyance to trustee for charitable purpose — conveyance to charitable corporation — uses

Property conveyed to a trustee for a charitable purpose is limited to the uses set forth in the terms of the trust, and property conveyed to a charitable corporation, free of a trust, is limited to the purposes set forth in the corporation's charter.

**7. Trusts § 4— charitable trusts — enforcement by State**

The State, through its Attorney General, may institute proceedings for the enforcement of charitable trusts or gifts. G.S. 36-20; G.S. 55A-50.

**8. Trusts § 4; Wills §§ 34, 38— bequest — absolute gift or trust**

An absolute gift was made, and no trust was created, by a bequest of personal property "to the Young Women's Christian Association of Asheville, North Carolina, to be used by it exclusively for the upkeep and maintenance of Moorhead House," a boarding house for women, the expression as to use of the property being merely a statement of motive in making the gift.

APPEAL by Attorney General from *Martin (Harry) J.,* at the 3 March 1972 Session of BUNCOMBE Superior Court.

Plaintiff instituted a declaratory judgment action seeking determination as to the extent of its title and rights in regard to property received from three sources.

Plaintiff received a $100,000 bequest under the will of S. E. Moorhead, which provided:

"ITEM 9th—I give and bequeath to Young Women's Christian Association of Asheville, North Carolina, the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, as a building fund to be used for the erection of such building or buildings or for the acquisition of such real estate as may be approved in writing by my Executors."

Plaintiff used the proceeds of this bequest to purchase property and to erect a building in Asheville, North Carolina, known as the "Moorhead House," which was used as a boarding house for young women.

Later, in 1943, plaintiff received personal property from the estate of Anna Johnson Moorhead pursuant to the following bequest:

"ITEM 7th—I direct my Executors hereinafter named to divide all the rest, residue and remainder of my estate, both real and personal and whatsoever kind, nature or description and wheresoever the same may be situated or located into FOUR (4) equal parts, and I give, devise and bequeath such four equal parts of my residuary estate as follows:"

\*    \*    \*    \*

(C) Two such parts to the YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF ASHEVILLE, NORTH CAROLINA, to be

used by it exclusively for the upkeep and maintenance of the MOORHEAD HOUSE.

On 21 November 1963, Edith Moorhead Bryant, the daughter of S. E. Moorhead and Anna Johnson Moorhead, assigned a certain fund to plaintiff by the following language:

" . . . . EDITH MOORHEAD BRYANT, . . . does hereby sell, assign, set over and transfer unto YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF ASHEVILLE, NORTH CAROLINA, INC., . . . a certain trust fund . . . [which] when received by the Assignee from the Trustee, will be held by the Assignee as a separate fund, to be invested in such manner as it may deem appropriate, and the income thereof, and principal to the extent that its Board of Directors shall deem necessary, be used for the operation, upkeep, maintenance and improvement of Moorhead House, one of the units operated in Asheville, North Carolina, by the Assignee."

These funds have been exclusively used by plaintiff for the upkeep and maintenance of the Moorhead House. There remains in the fund received from Anna Johnson Moorhead the following property: 400 shares of common stock of Liggett & Myers, and 100 shares of common stock of Cannon Mills.

The parties through counsel stipulated:

1. At the time the bequests of S. E. Moorhead, Anna Johnson Moorhead, and the assignment by Edith Moorhead Bryant were received by the plaintiff, it was a religious and charitable corporation.

2. At the time said bequests and assignment were received by the plaintiff, the object for which it was chartered was "to establish and maintain in Asheville, North Carolina, a boarding house or boarding houses for the exclusive use and benefit of local and transient self-supporting women of good character, and to promote the spiritual, mental, moral and physical well-being of such women and of the women of Asheville generally."

3. The corporate purposes were amended in September 1971 as follows: "The object for which this corporation is formed is to establish and maintain in Asheville facilities for the promotion of the spiritual, mental, moral and physical well-being of the community and its members."

On 1 July 1970 the plaintiff's Board of Directors terminated the function of housing young women at the Moorhead House because such a small number used the facility that large financial losses were being incurred from its operation. Plaintiff's Board of Directors also determined that Moorhead House was in excess of its needs and that it should be disposed of. Other properties adjoining Moorhead House, which were used for different purposes, have been sold because of obsolescence.

Plaintiff contended that all assets from these funds are owned by it in fee simple, and defendant, Robert Morgan, Attorney General, asserted that the assets were received by plaintiff in trust and that any relief granted should be by application of the *cy pres* doctrine.

The cause was heard by Judge Martin on an agreed statement of facts, and upon his conclusion that as a matter of law plaintiff is the owner of all the properties and funds, free from any trust, judgment was accordingly entered.

Defendant appealed only as to the fund created by the will of Anna Johnson Moorhead.

Defendant petitioned for writ of certiorari to North Carolina Court of Appeals prior to determination. We allowed this petition on 12 April 1972.

*Riddle and Shackelford, by John E. Shackelford, for plaintiff.*

*Attorney General Morgan, and Assistant Attorney General Christine Y. Denson for defendant.*

BRANCH, Justice.

Defendant, Attorney General, contends that the trial judge erred in holding that the assets received from the estate of Anna Johnson Moorhead are held by plaintiff in fee simple, discharged of any trust. He argues that the assets are held in trust and that any relief granted should be by application of the *cy pres* doctrine.

This Court has consistently rejected application of the *cy pres* doctrine, as such. However, it has long recognized that the courts may exercise their equitable power, in proper cases, to modify a charitable trust so as to prevent its failure and so as to effectuate the primary purpose of the trustor. *Trust Co.*

*v. Construction Co.,* 275 N.C. 399, 168 S.E. 2d 358; *Brooks v. Duckworth,* 234 N.C. 549, 67 S.E. 2d 752; *Woodcock v. Trust Co.,* 214 N.C. 224, 199 S.E. 20.

The *cy pres* doctrine derives its meaning from the Anglo-French phrase *cy pres comme possible,* meaning "near as possible." Thus, when a particular purpose set forth in a charitable trust becomes impossible, illegal or impracticable, the courts exercise their equitable powers to select a purpose as near as possible to that originally selected by the testator or trustor. Bogert, Law of Trusts and Trustees (2d ed, 1965) § 431; IV Scott, Law of Trusts (3d ed. 1967) § 399.

[1] The 1967 General Assembly enacted the Charitable Trust Administration Act, which expressly gave the courts the power to apply the *cy pres* doctrine to charitable trusts. When there is a charitable trust, bequest, or devise evidencing a general charitable intent by the grantor, and the specific, express purpose cannot be fulfilled because of illegality, impossibility or impracticability, this act specifically empowers the court, in the absence of alternate disposition, to modify the trust so as to apply the fund to a purpose as nearly as possible like the originally expressed purpose. G.S. 36-23.2. Note: "Trusts— *Cy Pres* Enacted in North Carolina," 46 NCLR 1020. The doctrine of *cy pres* applies only to charitable trusts. Bogert, Law of Trusts and Trustees (2d ed. 1965) § 431.

[2] Generally, when a trust is created for any lawful purpose which promotes the well-being of mankind and does not contravene public policy, it is charitable in its purpose. *Woodcock v. Trust Co., supra.* A charitable trust has also been defined as " . . . a fiduciary relationship with respect to property, arising as a result of a manifestation of an intent to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." Restatement (Second) of Trusts, § 348.

The parties stipulated that plaintiff was a charitable corporation at the time it received the fund, and that one of its corporate purposes was to establish and maintain a boarding house for young women. This corporate purpose was manifestly charitable. Thus, we need to decide only whether the will of Anna Johnson Moorhead created a trust.

**[3, 4]** A trust is based upon a direct declaration or expression of intent *(Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289), yet no particular words are necessary to create a trust if the purpose to create is evident. *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298; *Stephens v. Clark,* 211 N.C. 84, 189 S.E. 191. Therefore, we must ascertain the intent of the testatrix, for her intent must be given effect unless contrary to public policy or some rule of law. The intent of the testatrix is in reality her will. Such intent is to be determined by examining the provisions of the will in light of all surrounding facts and circumstances known to the testatrix. *Bank v. Home for Children,* 280 N.C. 354, 185 S.E. 2d 836; *Campbell v. Jordan,* 274 N.C. 233, 162 S.E. 2d 545; *McCain v. Womble,* 265 N.C. 640, 144 S.E. 2d 857; *In re Will of Wilson,* 260 N.C. 482, 133 S.E. 2d 189.

If the whole instrument discloses an intent by the testatrix to convey the legal title to the property or fund to plaintiff, Young Women's Christian Association of Asheville, North Carolina, to hold the property and deal with it for the benefit of another, the property will be affixed with a charitable trust, and, correspondingly, equitable duties will be placed on plaintiff as holder of the legal title. *King v. Richardson,* 46 F. Supp. 510, (M.D.N.C.) ; *Thomas v. Clay,* 187 N.C. 778, 122 S.E. 852; *Laws v. Christmas,* 178 N.C. 359, 100 S.E. 587. If such intent be not disclosed, plaintiff will be declared absolute owner of the fund, free of any trust.

G.S. 31-38 provides:

"Sec. 31-38. *Devise presumed to be in fee.*—When real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity."

**[5]** The provisions of this statute have been held to apply to the disposition by will of both real and personal property. *Worsley v. Worsley,* 260 N.C. 259, 132 S.E. 2d 579; *Heefner v. Thornton,* 216 N.C. 702, 6 S.E. 2d 506; *Barco v. Owens,* 212 N.C. 30, 192 S.E. 862.

In *Brinn v. Brinn,* 213 N.C. 282, 195 S.E. 793, this Court, speaking through Barnhill, J. (later C. J.) stated:

"A consideration of the decisions in this jurisdiction discloses that it is now a well-established rule in this State

that where an estate is given to a person generally or in-definitely it is construed to be a devise in fee simple, unless such devise shall, in plain and express words, show or it shall be plainly indicated by the will, or some part thereof, that the testator intended to convey an estate of less dignity. It is so provided by our statute.—C.S., 4162 [now G.S. 31-38]. *Springs v. Springs,* 182 N.C. 484; *Hayes v. Frank-lin,* 141 N.C. 599; *Carter v. Strickland,* 165 N.C. 69; *Hardy v. Hardy, supra* [174 N.C. 505]; *Barco v. Owens,* 212 N.C. 30; *Peyton v. Smith, ante,* 155. *Carter v. Strickland, supra,* is reported and annotated in Ann. Cases, 1915D, at p. 416."

It is seldom that we find aid in prior decisions when we seek to determine the intent of a testator. Although the North Carolina authority on the question here presented deals with real property, these cases offer guidance in reaching our de-cision as to the intent of the testatrix in bequeathing her per-sonal property.

This Court considered a conveyance of real estate by deed to a religious corporation in *St. James v. Bagley,* 138 N.C. 384, 50 S.E. 841. There Dr. A. J. DeRosset and wife executed a deed to the Vestry and Wardens of St. James Church, which deed contained the following recital:

" . . . that the said parties of the first part, for the purpose of aiding in the establishment of a Home for Indi-gent Widows or Orphans or in the promotion of any other charitable or religious objects to which the property here-inafter conveyed may be appropriated by the said parties of the second part, and in further consideration of $1 to them in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, have granted, bar-gained, and sold, and do by these presents grant, bargain, and sell to the said parties of the second part, . . . . "

The Court, in holding that no trust was created, stated:

" . . . 'The effect of a deed must depend upon the effect of the language used. A grantor can impose condi-tions and can make the title conveyed dependent upon their performance. But if he does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words

cannot be controlled by the language indicating the grantor's motive.' . . . . "

\* \* \* \*

" . . . By all of the canons of construction and the rules laid down by the courts for ascertaining the intention of the donor, we are brought to the conclusion that no trust is created by the language in this deed. In saying that no trust is created, we, of course, mean no other trust than is imposed upon all property held by the trustee or official body representing a religious society pursuant to the provisions of section 3665 of the Code. [now G.S. 61-3] The plaintiff held the property for the use of the congregation, consisting of the members of the church organized as St. James Parish, with the right and power to appropriate it to such uses and purposes as the said congregation, acting through its organized agencies, may direct . . . . *While the language used by the donor is not, strictly speaking, precatory, but rather expressive of motive, the same interpretation should be given it.* . . . (Emphasis ours.)

" . . . We simply decide that there is no declaration of trust in the deed made by Dr. DeRosset to the plaintiff, that the language sought to be construed into a trust is expressive only of his motive and purpose in conveying the property to the plaintiff, and, in our opinion, expressly excludes the idea of attaching a trust thereto."

A will was construed in order to determine title to real estate in the case of *Williams v. Thompson,* 216 N.C. 292, 4 S.E. 2d 609. The pertinent clause of the will provided:

"Item I: I leave to by niece Clarentine F. Clift lot No. 108, in the Town of Plymouth during her natural life, and after her death, I give and bequeath the said lot with all improvements and hereditaments to the Methodist Episcopal Church in this place, *to be used by the stewards or legal representatives of the said church in the Town of Plymouth, as a parsonage for the minister and for no other purpose,* in order to secure the possession of my burying ground to the aforesaid Church and to its keeping and care." (Emphasis ours.)

In holding that the will devised a fee in the land, this Court said:

"The language contained in the will, indicating that the property was to be used as a parsonage for the minis-

ter of the church in order to secure the possession of the burying ground to the church and to its keeping and care, cannot be held to have the effect of impressing a trust upon the legal title *(St. James v. Bagley,* 138 N.C. 384, 50 S.E. 841) . . . . the will expresses the wish of the testatrix as to future use of the land, but it cannot be given the legal effect of creating a trust such as to require the aid of a court of equity to enforce its administration."

See also: *Hall v. Quinn,* 190 N.C. 326, 130 S.E. 18; *Hass v. Hass,* 195 N.C. 734, 143 S.E. 541; *Tucker v. Smith,* 199 N.C. 502, 154 S.E. 826; *Church v. Refining Co.,* 200 N.C. 469, 157 S.E. 438.

We note cases from other jurisdictions which consider the question of whether devises and bequests to charitable corporations created trusts or vested unencumbered fees.

The Supreme Court of Kansas in *Bradley v. Hill,* 141 Kan. 602, 42 P. 2d 580, considered a devise in which testator gave to the Grand Lodge of the Independent Order of Odd Fellows real and personal property to be held "for the use only in maintaining the Old Folks Home for Odd Fellows . . . . " The Court reasoned that designation of purpose for which the legacy was to be used did not necessarily indicate an intention to create a trust and that where a gift is made to a charitable corporation charging it to use the gift for a purpose for which the corporation was formed, the gift should be construed to be absolute. The Court, upon this reasoning, held that no trust was created.

The same court in *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177, considered the provisions of a bequest to a religious corporation "for the purpose of building a church building . . . and for the purpose of furnishing said church," and held that this gift to a charitable organization was to aid in carrying out the purposes for which it was founded and did not create a trust in any legal sense.

In the case of *Sands v. Church of Ascension, Etc.,* 181 Md. 536, 30 A. 2d 771, two members of the Vestry gave to the Vestry $20,000 in bonds which were accompanied by a letter stating, in part: "These bonds are to be deposited in a box in

the Mercantile Trust & Deposit Company in the name of the Vestry. . . . It is our wish that the income from these bonds be used only for the payment of the Ground Rent as it becomes due and said income is not to be used for any other purpose whatsoever. . . . " The Church of Ascension united with another church and suit was brought to determine the ownership of the bonds. The court held that the united churches held the bonds absolutely and that no trust had been created. In so holding, the court stated: " . . . [T]hat a person cannot be both the trustee and the cestui que trust. It is obvious that in order to create a trust the legal estate must be separated from the beneficial enjoyment and therefore a trust cannot exist where the same person possesses both. . . . Where property is given to a corporation for such uses as are within the scope of its corporate powers, the conveyance does not create a trust." Accord: *Baltzell v. Church Home and Infirmary,* 110 Md. 244, 73 A. 151; *Board of Trustees of Ruston Circuit, Etc. v. Rudy,* 192 La. 200, 187 So. 549; *Prettyman v. Baker,* 91 Md. 539, 46 A. 1020; *Rohlff v. German Old People's Home,* 143 Neb. 636, 10 N.W. 2d 686; *First National Bank v. Trinity Protestant Episcopal Church of Galveston,* 219 S.W. 2d 828 (Tex. Civ. App. 1949).

In Bogert, Law of Trusts and Trustees (2d ed. 1965) § 46, it is stated:

> "The mere statement of the purpose for which a gift is made does not *per se* show an intent to make the donee a trustee to accomplish that purpose. The donee may be expected to accomplish the named object through his own voluntary action as absolute owner."

[6, 7]  It should be noted, however, that property conveyed to a trustee for a charitable purpose is limited to the uses set forth in the terms of the trust, and that property conveyed to a charitable corporation, free of a trust, is limited to the purposes set forth in its corporate charter. *St. James v. Bagley, supra;* Bogert, Law of Trusts and Trustees (2d ed., 1965) § 324. The State, through its Attorney General, may institute proceedings for the enforcement of charitable trusts or gifts. *Sternberger v. Tannenbaum,* 273 N.C. 658, 161 S.E. 2d 116; G.S. 36-20; G.S. 55A-50.

In support of his contention that a trust was created and that the doctrine of *cy pres* should be applied, the Attorney

General cites *Stephens v. Clark, et al, supra; Young v. Young,* 68 N.C. 309 (1873) ; *Crudup v. Holding,* 118 N.C. 222, 24 S.E. 7 (1896) ; *Jarrell v. Dyer,* 170 N.C. 177, 86 S.E. 1031 (1915) ; *Morris v. Morris, supra.* None of these cases refer to charitable trusts. Although they stand for the proposition that a trust may be created without the use of any particular words, the cases are readily distinguishable from instant case in that each of the cases cited by the Attorney General a person is named to hold the legal title for the equitable use or benefit of another, thereby evidencing a clear intent to create a trust.

[8] Decision of the question here presented requires that we now consider the language of the will in connection with circumstances known to Anna Johnson Moorhead at the time she executed that instrument. Plaintiff held Moorhead House in fee simple at the time the bequest was made. At that time Moorhead House was being used for the principal purpose set forth in plaintiff's charter. The will was drawn by a skilled lawyer. The words of the conveyance, to wit, "I give, devise and bequeath" are unequivocal and in no manner limit the conveyance or passage of the fund. The bequest was made to the Young Women's Christian Association of Asheville, North Carolina, and not to another to hold or to be dealt with for the benefit of the Young Women's Christian Association. The will contained no provision for reverter or payment over in event the fund was not used for maintenance of the Moorhead House. Nor is there any limitation as to the expenditure of the principal of the fund. The expression relied upon by defendant to limit the operative words "will, devise and bequeath" relates only to the management of the property rather than to the estate or interest bequeathed. The expression as to use is merely a statement of motive in making the bequest. There is no division of equitable and legal estates. The testatrix unequivocally gave the fund to the charitable corporation, to be used for its charitable purposes. We find nothing in the language of the bequest or any circumstances known to the testatrix which limits the operative words of the bequest.

The trial court correctly adjudged and declared plaintiff to be the owner in fee simple, free of any trusts, of the property and fund set forth in the complaint.

The judgment of the Superior Court is

Affirmed.